UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GRACE YADOR                               *

                                          *

    *Plaintiff,*                          *

v.                                        *       Case No. 1:26-cv-00416-JMC
                                          *                 1:26-cv-00379-ABA
JETRO HOLDINGS, LLC, ET AL.               *

    *Defendants.*                         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Grace Yador ("Platiniff"), initiated the present lawsuit on November 16, 2025, in state court against Defendant Jetro Holdings, LLC ("Defendant Jetro Holdings"), and Defendant Gulfstream Produce, Inc ("Defendant Gulfstream"). (ECF No. 6).   Under the original Complaint (ECF No. 6), Plaintiff asserted a negligence claim against Defendant Jetro Holdings and a strict products liability claim against both defendants. In a Memorandum Opinion and Order dated March 20, 2026, the Court dismissed without prejudice and with leave to amend the strict liability claim against Defendant Gulfstream. (ECF No. 21).   Plaintiff filed an Amended Complaint on April 17, 2026.  (ECF No. 24).   Under the Amended Complaint, Plaintiff now asserts a negligence claim against Defendant Jetro Holdings (Count I); a strict product liability claim against both Defendants (Count II); and a negligence claim against Defendant Gulfstream (Count III).  (ECF No. 24 at 7-8, ).[1]  Presently pending before the Court is Defendant Gulfstream's Second Motion to Dismiss.  (ECF No. 26).  The motion has been fully briefed  (ECF Nos. 26, 27, 28), and no

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, Defendant Gulfstream's Motion to Dismiss (ECF No. 26) shall be DENIED.

## I.   BACKGROUND

The instant litigation arises from an alleged accident at a grocery store. (ECF No. 24 at 4). Plaintiff alleges that on November 17, 2022, she was a customer at Defendant Jetro Holdings' warehouse grocery store located at 3405 Annapolis Road, Baltimore MD 21227 (the "Store"). *Id.* Plaintiff entered the Store with the intent to purchase produce items. *Id.* Plaintiff alleges that she approached the produce section and saw "cardboard boxes of sweet potatoes stacked on a wooden pallet." *Id.* She avers "[t]he boxes had 'cut out' slots for customers to grab with their hands in order to carry the boxes." *Id.* "The available boxes of sweet potatoes were stacked at the rear of the pallet, which indicated to Plaintiff that the boxes nearest the shopping aisle were already taken by other customers." *Id.*

Therefore, Plaintiff alleges that "[i]n order to get a box of sweet potatoes off a stack on the pallet, and because Plaintiff had been previously instructed by store employees that all purchases were 'grab and go' without assistance by store employees," Plaintiff "stepped up, onto the pallet and pulled a box at the top of the boxes of sweet potatoes, so as to place it onto her shopping cart." *Id.* at 3. As Plaintiff placed her right hand into one of the slots at the top of a box, she indicates she "pulled on the box in order to expose the second handle on the other side" and "the slotted cutout handle broke away, causing Plaintiff to fall backward, off the pallet and onto the floor." *Id.* As a result, Plaintiff alleges serious, permanent injuries from the fall. *Id.*

Relevant to the instant motion, Plaintiff brought suit against both Defendant Jetro Holdings, the Store's owner, and Defendant Gulfstream, the alleged manufacturer, packager, and distributor of the sweet potatoes. *Id.* at 5. With respect to Defendant Gulfstream, Plaintiff alleges

that as part of its business, "Gulfstream packed its sweet potatoes into cardboard boxes equipped with cut-out handles and distributed those boxes—containing the sweet potatoes—to wholesale and retail customers, including Defendant Jetro." *Id.* Defendant Gulfstream "either manufactured those boxes itself or selected, specified, and procured them for use as the packaging in which its sweet potatoes would be sold and distributed." *Id.* Plaintiff further alleges "Gulfstream expected and intended that the cardboard boxes containing its sweet potatoes would reach retail customers, including Plaintiff, in substantially the same condition as when they left Gulfstream's possession, with the sweet potatoes contained within the boxes and the boxes' cut-out handles intact and available for use by customers." *Id.* She continues, "[t] he sweet potatoes and their cardboard boxes were not separable at the point of retail sale—they were sold and purchased as a unit, with the box serving as both the container and the means of carrying the product to the checkout." As such, she asserts that Defendant "Gulfstream knew, or reasonably should have known, that its sweet potatoes would be sold at the retail level in the very boxes in which they were packed and shipped; and they would be displayed at Jetro's store on pallets, in stacks of the cardboard boxes containing the sweet potatoes; and that Jetro's customers would take the integrated unit-potatoes and box together, off the stack on the pallets for checkout at the cashier stations." *Id.* at 5-6.

Regarding the cut-out boxes, Plaintiff alleges "that the cut-out cardboard handles on the boxes were structurally inadequate to bear the weight of the sweet potatoes contained within the box under the conditions of foreseeable retail use." *Id.* at 6. She specifies, "the sweet potatoes packed in each box were of sufficient weight that, when a customer gripped the cut-out handle and exerted the lateral and downward pulling force necessary to retrieve the box, the handle could not withstand the combined stress of the potatoes' weight bearing down on the bottom of the box and the tensile force applied to the cut-out handle." *Id.* The Complaint posits that "[i]t was the weight

3

of the sweet potatoes within the box—pressing against the bottom and sides of the cardboard—that caused the cut-out handle to tear away from the cardboard when Plaintiff gripped it and pulled." Therefore, she asserts that "[h]ad he box been adequately designed to carry the weight of the potatoes Gulfstream placed inside it, the handle would not have failed." *Id.*

## II.    STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

## III.    ANALYSIS

Defendant Gulfstream argues that both claims against it fail as a matter of law. (ECF No. 26). The Amended Complaint adds several paragraphs of new allegations directed at Gulfstream,

as well as a new negligence claim. (ECF No. 24). As a result, several of the arguments at issue here have been previously considered at the first motion to dismiss stage, whereas some have not yet been at issue.

As the Court stated previously, Maryland courts have adopted a strict liability standard as the basis for product liability claims. *See Phipps v. Gen. Motors Corp.*, 278 Md. 337, 241-41, 363 A.2d 955 (1976). In so doing, the Court specifically adopted the elements of the tort as set out in § 402A of Restatement (Second) of Torts (1965). *See id.* In *Phipps's* wake, Courts have come to recognize that in order to recover in a strict liability case, "a plaintiff need not prove any specific act of negligence; he must merely prove that the product was in a defective condition *and* unreasonably dangerous at the time it was sold." *Klein v. Sears, Roebuck and Co.*, 92 Md. App. 477, 484-85, 608 A.2d 1276 (Md. Ct. Spec. App. 1992). "The defect may be one that occurred in the manufacturing process, in which case the product does not conform to the manufacturer's own standards, or it may be a defect in design, in which case what proves to be a defect was actually intended by the manufacturer." *Id.* at 485. A plaintiff must also prove that the defect caused the injuries and that the alleged defective product "was expected to and did reach the consumer" without any "substantial change" in its condition. *Phipps*, 278 Md. at 341-44.

A. **At the Motion to Dismiss Stage, the Amended Complaint States a Cognizable Products Liability Claim Based on Integration.**

As discussed in addressing the first motion to dismiss, liability attaches only where the defendant is engaged in the business of selling a particular product and expects that particular product to reach the user or consumer in substantially the same condition. *Phipps*, 278 Md. at 341-44. Under the Maryland approach, strict liability for a product and its packaging arises where the product and its packaging are "purchased by the user or consumer as an integrated whole" and

where it is anticipated that the container and its contents will be "sold as a unit." *See id*; *see also* Restatement (Second) of Torts § 402A (1965), Comment h.

Defendant argues the Amended Complaint fails to state a claim because Plaintiff amended the allegations using language that appears in Comment h and in the Court's analysis on the first motion to dismiss. (ECF No. 26-1 at 5) ("Rather than curing that defect by alleging any new facts, the Amended Complaint merely lifts the Court's own language and drops it into the pleading almost verbatim."). For example, Defendant argues that the new allegation that Defendant Gulfstream "expected and intended that the cardboard boxes containing its sweet potatoes would reach retail customers as an integrated unit — sold together, with the potatoes inside the box and the cut-out handles available for use by customers to carry the box" does not constitute a factual allegation. Rather, Defendant urges that it is "a recitation of the legal element the Court found missing, transplanted from the Restatement and the Order itself." Plaintiff argues that the aforementioned allegation and others described above are factual, not legal conclusions because "[t]hey describe Gulfstream's actual business conduct: packing sweet potatoes into boxes with cut-out handles, distributing those boxes to Jetro, and doing so with knowledge that retail customers would use the boxes' handles to carry them to checkout." (ECF No. 27-1 at 4). As such, Plaintiff urges that Defendant's insistence that it is a mere grower with no connection to retail packaging is a factual defense to be explored through discovery, not a basis for dismissal at this early stage. *Id.*

The Court agrees with Plaintiff. Where the Amended Complaint does reflect language that was integral to the Court's analysis at the first motion to dismiss stage, the Court is satisfied that the Amended Complaint relies on enough factual assertions that Defendant Gulfstream is an agricultural grower that packs its product in cardboard boxes with the intention and knowledge that those boxes will be used by retail customers to carry the potatoes it grows. It cannot be said

the only added allegations are of a bare, conclusory nature like, "The potatoes and boxes are sold as a unit," without more. *See* (ECF No. 24). Thus, the Court does not find compelling Defendant's case law showing many instances in which the Court has dismissed claims for failure to include new facts so as to state a claim. Where Plaintiff has included some conclusory language, Plaintiff has also pleaded new facts concerning Defendant Gulfstream's control, knowledge, and packaging process. (ECF No. 24). Similarly, Plaintiff pleads that Defendant Gulfstream knew and intended, by way of its packing process, that the potatoes would be sold in the boxes such that customers would purchase them while in the carboard box. *Id.* at 5-6.

No matter how unlikely Defendant may find the veracity of these allegations, the issue before the Court is not whether the allegations are true; it is whether they state a cognizable claim. The Court does not agree with Defendant that it would be necessary to plead facts concerning contracts to which Plaintiff is not a party or specific details on the boxes to create a plausible claim.[2] The Court also disagrees with Defendant's assertion that the allegations have not changed. Plaintiff's amendments are extensive, and Plaintiff asserts several factual allegations giving rise to an inference that the potatoes and boxes are intended to be sold together. [3] (ECF No. 24 at 5-6). It

---

[2] Defendant argues that details on the boxes such as "the presence of retail barcodes, suggested retail pricing, food safety recommendations, a factory freshness seal, or consumer recycling instructions" would be examples of necessary facts to state a claim. (ECF No. 26-1 at 6). Similarly, Defendant argues the Amended Complaint is devoid of allegations "that the boxes bore consumer-oriented graphics, marketing or social media contact information, nutrition facts, ingredient lists, suggested servings, value propositions, or proposed recipes: the sort of typical marketing copy that is replete across retail produce containers in the pantries and refrigerators of the average American." *Id.* Where the Court disagrees with Defendant that such omissions are dispositive at this early stage for the reasons set forth above, Defendant is not precluded from making similar arguments post-discovery, if appropriate. In the Court's view, such arguments serve to defeat the strength and veracity of the claim, not a minimal plausible standard.

[3] Examples include,

> Defendant Gulfstream Produce, Inc. is engaged in the business of growing, packaging, and distributing sweet potatoes for sale through downstream wholesale and retail channels. As part of that business, Gulfstream packed its sweet potatoes into cardboard boxes equipped with cut-out handles and distributed those boxes—containing the sweet potatoes—to wholesale and retail customers, including Defendant Jetro. Gulfstream either manufactured those boxes itself or selected, specified, and procured them for use as the packaging in which its sweet potatoes would be sold and distributed.
>
> …

may be the case that discovery precludes a theory predicated on integration, but at this early stage, the Court is satisfied that the Amended Complaint pleads sufficient facts concerning the packaging to retail process such that an integration theory is at least plausible. *See* Restatement (Second) of Torts § 402A (1965), Comment h ("The container cannot logically be separated from the contents when the two are sold as a unit, and the liability stated in this Section arises not only when the consumer drinks the beverage and is poisoned by it, but also when he is injured by the bottle while he is handling it preparatory to consumption.").

Therefore, the Motion to Dismiss (ECF No. 26) is DENIED on this basis.

### B.    The Amended Complaint States Sufficient Facts to Plead Causation at this Stage.

Next, Defendant again argues that the Amended Complaint fails to state a claim based on deficient allegations concerning causation.  Defendant argues the Amended Complaint, which states the precise nature of Plaintiff's fall upon trying to lift the potato box, only highlights the causation issue.  (ECF No. 26-1 at 8).  Defendant compares the allegations in the Complaint and Amended Complaint as follows:

> Where the original complaint only relayed how "the slotted cutout handle broke away, causing Plaintiff to fall backward, off the pallet and onto the floor," the Amended Complaint explains that the handle "tore away from the cardboard" due to the "pulling force required to dislodge the box" from its location. She further describes this in precise mechanical terms: the exertion of "lateral and downward pulling force" which, in combination with "the potatoes' weight bearing down on the bottom of the box" applies "tensile force" to the cut-out handle. This, in turn, created a causal connection: the structural failure of the handle caused her "to lose her grip" and fall. "Specifically, the weight of the sweet potatoes packed by

---

The sweet potatoes and their cardboard boxes were not separable at the point of retail sale—they were sold and purchased…with the box serving as both the container and the means of carrying the product to the checkout. Gulfstream knew, or reasonably should have known, that its sweet potatoes would be sold at the retail level in the very boxes in which they were packed and shipped; and they would be displayed at Jetro's store on pallets, in stacks of the cardboard boxes containing the sweet potatoes; and that Jetro's customers would take the integrated unit-potatoes and box together, off the stack on the pallets for checkout at the cashier stations.

(ECF No. 24 at 5-6).

> Gulfstream into the box caused the cutout handle to fail when Plaintiff gripped it and pulled, depriving Plaintiff of her grip and causing her to fall backward off the pallet.

(ECF No. 26-1 at 8) (quoting (ECF No. 24)) (cleaned up). Defendant argues that these facts explain that the "handle did not fail because it was insufficiently strong to bear the weight of the potatoes, but because it was insufficiently strong to bear Plaintiff's weight, particularly when applied in a 'lateral and downward' direction." *Id.* As such, Defendant challenges whether the Amended Complaint fails to state a claim based on reasonably foreseeable and intended use. *Id.* at 9. Plaintiff counters "[t]he theory is straightforward and plausible: a box handle that cannot bear the weight of the potatoes packed inside it will fail whenever a customer attempts to carry or retrieve the box, because any act of carrying a loaded box necessarily requires the handle to bear the load of the contents." (ECF No. 27-1 at 5). Thus, Plaintiff urges that the allegations that she stepped onto the palette and pulled downward is not unforeseeable because a "handle designed to function as a carrying mechanism for a full box of sweet potatoes must be capable of withstanding the forces generated during the foreseeable act of retrieving that box." *Id.* at 5-6.

To revisit the Court's analysis concerning the defective Complaint, the Court noted that (1) the Complaint stated only conclusory causation allegations, (2) Plaintiff offered no argument to address the causation issue in her brief, and (3) "the Complaint fails to set forth facts showing how there would be any causal relationship between the weight of the potatoes and the handle breaking away when Plaintiff reached upward and pulled on it after stepping onto the palette." *Yador v. Jetro Holdings, LLC*, Case No. 1:26-cv-00416-JMC, 1:26-cv-00379-ABA, 2026 WL 787948, at *3-*4 (D. Md. Mar. 20, 2026).

Defendant is correct that a product cannot be considered unreasonably dangerous if it is used in a manner that is unforeseeable. *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 393, 495 A.2d 348 (1985) ("The recent trend in a number of courts has been to consider the question of

misuse as a part of the plaintiff's case, and as being directly related to the issues of defectiveness, or of proximate cause, or both."); *Browne v. State Farm Auto. Ins. Co.*, 258 Md.App. 452, 511, 298 A.3d 975 (Md. Ct. Spec. App. 2023) (recognizing that a misuse of a product can negate causation in the strict liability context). Defendant clarifies that in the instant motion, it is not making the same misuse argument the Court addressed in the previous motion to dismiss; rather, Defendant argues that the Amended Complaint fails to plead causation because the box was handled in an unforeseeable manner as a matter of law. (ECF No. 26-1).

In view of the refined allegations, taken with Plaintiff's theory stated in her opposition, the Court again finds that at this early stage, the specification creates a plausible claim, even if Defendant may find discovery strengthens the arguments it has made at this stage. To be sure, the Court finds that Plaintiff stepping up onto the palette to reach the potatoes does not preclude a cognizable foreseeable misuse for causation purposes at this juncture, in part, because of the facts added about the design and intent for the potatoes to be sold in the cardboard boxes. In view of those facts, it is at least plausible at this stage, that it would be foreseeable that customers would at some point in a grocery store attempt to reach up onto a shelf in order to purchase potatoes sold in a cardboard box as alleged. The Court also agrees with Plaintiff that the issue of whether Plaintiff's use—whether for an affirmative defense or to defeat causation—constitutes unforeseeable conduct still depends on facts that must be developed during discovery. At this stage, the Court finds that it is too early to make such determinations.

Therefore, taking all inferences in the light most favorable to Plaintiff and in consideration of the additional allegations in the Amended Complaint, the Motion to Dismiss (ECF No. 26) is DENIED as to Count II.

C.    **Plaintiff has Stated a Plausible Negligence Claim.**

At issue for the first time is whether Plaintiff has stated a cognizable negligence claim (Count III) against Defendant Gulfstream, as she added the claim when she amended the Complaint.  (ECF No. 24). On the issue of duty, Defendant Gulfstream argues that (1) it satisfied its duty of care because the boxes survived shipment and handling until the point at which Plaintiff tried to carry the box and (2) the duty Plaintiff must plead does not exist as a matter of law.  Its latter argument boils down to the following statements:

> The duty Plaintiff actually needs in order to recover, then, is not the duty she articulates. Framed most charitably, Plaintiff proposes that a duty upon produce growers to design or select packaging robust enough to withstand any additional lateral forces a customer might be capable of generating while dislodging a wedged box from an elevated position. No such duty exists under Maryland law. A produce grower's duty of reasonable care extends to the foreseeable uses of its packaging in its intended application: transport, storage, and ordinary retail handling. It does not extend to ensuring that shipping containers can serve as load-bearing equipment for customers attempting to extract them from elevated stacks.

(ECF No. 26-1 at 12). The Court is unpersuaded by both arguments.  The Court views Defendant Gulfstream's first argument as raising an issue concerning the merits of the facts Plaintiff asserted. Whether the handling of the boxes at each instance prior to that involving Plaintiff precludes recovery is a matter of the weight of the evidence and strength of Plaintiff's merits.  Accordingly, the Court will not grant the motion on that basis.  Moreover, the parties agree that the scope of a duty of care is measured by the foreseeability of the harm. *Rhaney v. Univ. of Md. E. Shore*, 388 Md. 585, 597 (2005); *May v. Air & Liquid Systems Corp.*, 446 Md. 1, 18, 129 A.3d 984 (2015) ("As we have said, in negligence cases involving personal injury, the principal determinant of duty is foreseeability.").  The Court has already concluded that in the strict products liability context, Plaintiff has stated a cognizable claim on the issue of foreseeability under the Amended Complaint. The Court does not agree with Defendant's effort to create multiple duties of care.  There is one duty of care under this claim; that is, the duty to prevent reasonably foreseeable harm.  *Rhaney*,

388 Md. at 597. Therefore, applying the same reasoning to the issue of foreseeability now in the negligence context, the Court is satisfied that a claim has, at the very least, been pled.

Finally, Defendant appears to raise a redundancy argument that in view of the strict liability claim, a negligence claim adds nothing to the Complaint. However, Maryland courts permit both strict liability and negligence claims in products related cases to exist as separate theories of liability. *E.g.*, *May*, 446 Md. at 10 ("We analyze the negligent and strict liability failure to warn issues in turn, even though the analytical basis for each overlaps with the other.").

Therefore, the Motion to Dismiss (ECF No. 26) shall be DENIED.

## IV.    CONCLUSION

For the foregoing reasons, it is this 3rd day of June 2026, hereby ORDERED that Defendant Gulfstream Produce Inc.'s Motion to Dismiss (ECF No. 26) is DENIED.

Dated: June 3, 2026                                    _____/s/_____

                                                J. Mark Coulson
                                                United States Magistrate Judge