**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GRACE YADOR** | * | |
| | * | |
| *Plaintiff,* | * | |
| v. | * | Case No. 1:26-cv-00416-JMC |
| **JETRO HOLDINGS, LLC, ET AL.** | * | |
| *Defendants.* | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Grace Yador ("Plaintiff"), initiated the present lawsuit on November 16, 2025, in state court against Defendant Jetro Holdings, LLC ("Defendant Jetro"), and Defendant Gulfstream Produce, Inc ("Defendant Gulfstream"). (ECF No. 6). Plaintiff's Amended Complaint asserts a negligence claim against Defendant Jetro, (Count I); a strict product liability claim against both Defendants (Count II); and a negligence claim against Defendant Gulfstream (Count III). (ECF No. 24 at 7–12).[1] On July 6, 2026, Defendant Jetro filed a Crossclaim against Defendant Gulfstream. (ECF No. 32).[2] Defendant Jetro asserts claims of contractual indemnification (Count I); common law indemnification (Count II); contribution (Count III); and breach of contract (Count IV). (ECF No. 40-1 at 6–9). Presently pending before the Court is Defendant Gulfstream's Partial Motion to Dismiss Counts I and IV of the Crossclaim (the "Motion"). (ECF No. 34). The Motion has been fully briefed (ECF Nos. 34, 39) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md.

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

[2] On August 17, 2026, Defendant Jetro filed a consent motion to amend/correct the Crossclaim to correct a typographical error. (ECF No. 40). The Court approved the motion the following day, on August 18, 2026. (ECF No. 41). Thus, the Court will cite to the operative Crossclaim at ECF No. 40-1.

2025). For the reasons set forth herein, Defendant Gulfstream's Motion to Dismiss (ECF No. 34) shall be DENIED.

## I. BACKGROUND

The instant litigation arises from an alleged accident at a grocery store (ECF No. 24 at 4). Plaintiff alleges that she was a customer at Defendant Jetro's warehouse grocery store located at 3405 Annapolis Road, Baltimore MD 21227, where she observed boxes of sweet potatoes stacked at the rear of a pallet. *Id.* Plaintiff alleges she stepped onto the pallet to pull the box of sweet potatoes at the top of the stack, but when she did so "the slotted cutout handle tore away from the cardboard under the combined wight of the potatoes and the pulling force required to dislodge the box from the top of the stack, causing Plaintiff to lose her grip and fall backward off the pallet and onto the floor." *Id.* at 4–5. Plaintiff claims that she suffered serious, permanent injuries from the fall. *Id.* at 5.

Plaintiff brought suit against both Defendant Jetro, the Store's owner, and Defendant Gulfstream, the alleged manufacturer, packager, and distributor of the sweet potatoes.[3] *Id.* at 5, 7–12. Plaintiff alleges that the cardboard box was "structurally inadequate to bear the weight of the sweet potatoes contained within the box under the conditions of foreseeable retail use." *Id.* at 6. Further, she alleges it was "reasonably foreseeable that the defective and inadequate design of the cut-out handle would cause the handle to tear away from the box under the weight of the sweet potatoes when a customer attempted to retrieve a box at the retail level, thereby causing the customer to lose her grip and fall." *Id*. at 10.

---

[3] Plaintiff's first Complaint (ECF No. 6) was dismissed by the Court without prejudice on May 20, 2026. (ECF No. 21). Plaintiff filed an Amended Complaint on April 17, 2026. (ECF No. 24). Defendant Gulfstream filed a Motion to Dismiss the Amended Complaint (ECF No. 26) which was denied on June 3, 2026. (ECF No. 29).

Defendant Jetro filed a Crossclaim against Defendant Gulfstream on July 6, 2026, which it amended on August 17, 2026.[4] (ECF Nos. 32, 40, 41). Defendant Gulfstream filed a Partial Motion to Dismiss Defendant Jetro's Crossclaim on July 27, 2026, challenging both the contractual indemnification (Count I) and breach of contract claims (Count II). (ECF No. 34). Defendant Jetro filed its Opposition to the Motion on August 17, 2026. (ECF No. 41).

## II. STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546). A co-defendant's motion to dismiss a

[4] Defendant Gulfstream filed a Crossclaim against Defendant Jetro on July 2, 2026. (ECF No. 31). Defendant Jetro answered on July 22, 2026. (ECF No. 33).

crossclaim made against it pursuant to Rule 12(b)(6) is also reviewed for *Twombly* plausibility. *Markel Am. Ins. Co. v. XDS, LLC*, No. 7:20-CV-00075-M, 2020 WL 4938435, at *1 (E.D.N.C. Aug. 24, 2020).

## III. ANALYSIS

### A. New York Law Governs the Construction of the Vendor Agreement

Defendant Gulfstream claims that the Vendor Agreement is governed by New York law.[5] (ECF No. 34-1 at 7). Defendant Jetro's Opposition does not refute Defendant Gulfstream's claim regarding the governing law. This Court notes that a federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941); *United States ex rel. Roman Mech., Inc. v. Lifecycle Constr. Servs., LLC*, No. CV MJM-23-1118, 2024 WL 3200702, at *3 (D. Md. June 26, 2024) ("The law of the forum state, Maryland, guides this Court's choice-of law analysis.").

Section 5 of the Vendor agreement states that it "shall be governed and construed by the laws of the State of New York." (ECF No. 40-1 at 37). This Court, sitting in Maryland, recognizes that Maryland Courts have "long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract, and thereby trump the conflict of law rules that otherwise would be applied." *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007). Since the parties' agreement has a New York choice-of law provision, the Court will apply New York law to the claims for purposes of ruling on Defendant Gulfstream's motion.

---

[5] Defendant Gulfstream's Motion to Dismiss states that "[t]he Court need not resolve the question at this stage, however, because on the principles that control this motion – the strict construction of indemnification provisions and the requirement of clear and unequivocal language before a contract will be read to indemnify a party against its own negligence – New York and Maryland law are materially identical." (ECF No. 34-1 at 7).

**B. At the Motion to Dismiss Stage, Defendant Jetro States a Cognizable Claim for Contractual Indemnification**

1. Defendant Jetro States a Cognizable Claim for Indemnification Under the Vendor Agreement

Count I of Defendant Jetro's Amended Crossclaim asserts a claim for contractual indemnification against Defendant Gulfstream. (ECF No. 40-1 at 2–3). Specifically, it alleges that Defendants Jetro and Gulfstream entered into a Vendor Agreement on October 15, 2014, which was later renewed on February 26, 2020, "wherein Gulfstream was responsible for the production, packaging, packing, storage, and delivery of products to Jetro." *Id.* at 3. Section 2 of the Vendor Agreement states that Gulfstream "indemnifies and hold[s] harmless [Jetro]" in three circumstances. *Id.* Those circumstances include suits:

> (a) brought by any lawful government authority against or concerning [Gulfstream's] products for or on account of any alleged violation of law or (b) that may in any way arise from breach of warranty, express or implied, as to the quality of [Gulfstream's] products, their merchantability or their fitness for the purpose for which they were sold, or [(c)] which may arise out of any act, negligence or omission by [Gulfstream] or its employees in the production, packing, storage, or delivery of such products.

*Id.* Defendant Jetro claims that Defendant Gulfstream is liable for indemnification because "Plaintiff's claims arise from Gulfstream's products, including the packaging and delivery of the subject box." *Id.*

Defendant Gulfstream's Motion argues that the Vendor Agreement "fails to the extent it seeks to shift to Gulfstream any liability arising from Jetro's own conduct, because nothing in the provision Jetro pleaded 'evinces an "unmistakable intent"' to indemnify Jetro against its own negligence." [6] (ECF No. 34-1 at 9). Defendant Gulfstream further explains that Count I of the

[6] Defendant Jetro's original Crossclaim contained a typographical error as it stated that itself and Defendant Gulfstream entered into the Vendor Agreement on October 15, 2024, and failed to attach the Vendor Agreement as an exhibit to the Crossclaim despite it being described as "Exhibit B." (ECF No. 32 at 3). Both errors were corrected in

Crossclaim is improper because it demands "'contractual indemnification from Gulfstream with respect to any damages which may be recovered by Plaintiff against Jetro' without limitation, and thus including any damages attributable to Jetro's own negligence." *Id.* Consequently, Defendant Gulfstream claims that Count I should be dismissed "to the extent it seeks indemnification for liability arising from Jetro's own negligence." *Id.* at 11.

However, Defendant Jetro's Opposition clarifies that "Jetro is not seeking indemnification for its own independent negligence." (ECF No. 39 at 5). Instead, Defendant Jetro alleges that the "claims arise, at least in part, from Gulfstream's own conduct in producing packing and supplying the subject box" and that its claim for contractual indemnification "is precisely the type of claim contemplated by the Vendor Agreement . . . ." *Id.* at 5–6.

The Court first notes that Defendant Gulfstream is correct in its assertion that New York laws require the Court to "construe a contract to provide indemnity to a party for its own negligence where the contractual language evinces an 'unmistakable intent to indemnify . . . .'" *Great Northern Ins. Co. v. Interior Constr. Corp.*, 7 N.Y.3d 412, 417 (2006); *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491–92 (1989) ("The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances."). Nevertheless, Defendant Jetro expressly stated that it is not seeking indemnification for its own independent negligence. (ECF No. 39 at 5). Defendant Gulfstream's argument that the Vendor Agreement does not require indemnification for Defendant Jetro's own negligence therefore presents no issue for the Court to resolve. Accordingly, the Court need not determine whether the Vendor Agreement would permit such indemnification.

---

Defendant Jetro's Amended Crossclaim. (ECF No. 40-1 at 3). As a result, Defendant Gulfstream's arguments relating to the incorrect date in the Crossclaim or the Cout's ability to consider the Vendor Agreement are moot.

The relevant question at this stage is instead whether Defendant Jetro has plausibly alleged a claim for indemnification within the scope of the Vendor Agreement. The Court concludes that it has. The Court interprets Defendant Jetro's representation as a stipulation of sorts that it is seeking indemnification only for Count II—strict product liability, not Count I, negligence. This comports with traditional notions of indemnity in that a retailer like Defendant Jetro could typically seek indemnification against a supplier like Defendant Gulfstream if the retailer's sole liability stems from its position in the chain of distribution for the defective product.

The Vendor Agreement provides that Defendant Gulfstream will indemnify Defendant Jetro in actions that "may arise out of any act, negligence or omission by [Gulfstream] or its employees in the production, packing, storage, or delivery" of its products. (ECF No. 40-1 at 36). Defendant Jetro claims that Defendant Gulfstream supplied the box of potatoes that allegedly caused Plaintiff's injuries and that Plaintiff's claims therefore fall within the scope of the indemnification provision. (ECF No. 39 at 5). These allegations are sufficient to plausibly establish that Plaintiff's claims may fall within the scope of the Vendor Agreement's indemnification provision. The Court also agrees with Defendant Jetro's argument that whether Plaintiff's alleged injuries are attributable to a defect in the box supplied by Defendant Gulfstream, the manner in which Defendant Jetro displayed the product, or some combination of the two presents a factual question that cannot be resolved at the motion to dismiss stage.

Accordingly, Defendant Jetro has plausibly alleged a claim for contractual indemnification. To the extent Defendant Gulfstream seeks dismissal on the ground that the Vendor Agreement does not indemnify Defendant Jetro for its own negligence, that argument is moot as Defendant Jetro does not seek indemnification on that basis.

2. <u>Defendant Jetro's Request for Attorneys' Fees Incurred Defending Against Plaintiff's Claims is Sufficiently Pled</u>

Defendant Gulfstream then argues that Count I includes a demand for "attorneys' fees, costs, and expenses" from Defendant Gulfstream that is improper "to the extent that demand encompasses fees Jetro incurs prosecuting this Crossclaim against Gulfstream, as distinct from fees incurred defending Plaintiff's claims . . . ." (ECF No. 34 at 11–12). Defendant Gulfstream states that indemnification provisions do not extend to fees incurred as a result of litigation between contracting parties unless there is unmistakable intent to do so in the language of the promise. *Id.* at 12.

Defendant Jetro's Opposition responds to Defendant Gulfstream's Motion by explaining that it only seeks fees "it has incurred and will continue to incur in defending against Plaintiff's claims." (ECF No. 39 at 6). Therefore, Defendant Jetro states that it is entitled to attorneys' fees incurred in defending against Plaintiff's claims because the indemnification provision in the Vendor Agreement otherwise encompasses "legal fees and other expenses and costs incurred by or imposed upon [Defendant Jetro] . . . ." *Id*; (ECF No. 40-1 at 3).

The Court agrees with Defendant Gulfstream's contention that it cannot be liable for fees incurred by Defendant Jetro in prosecuting the Crossclaim against it absent sufficiently clear language in the agreement. *See Hooper Associates, Ltd.*, 74 N.Y.2d at 491–93. In *Hooper*, the New York Court of Appeals held that a similar indemnification provision should be construed to pertain "only to third-party suits" as it did not "contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant." *Id.* at 492–93. Here, however, Defendant Jetro expressly states that it does not seek attorneys' fees incurred in prosecuting its Crossclaim against Defendant Gulfstream and instead only seeks fees "it has incurred and will continue to incur defending against Plaintiff's claims." (ECF No. 39 at 6). Defendant Jetro's request for attorneys' fees incurred in defending against Plaintiff's claims

plausibly falls within the Vendor Agreement, which states that Defendant Gulfstream will indemnify for "legal fees and other expenses and costs incurred or imposed upon [Jetro] . . . ." (ECF No. 40-1 at 3). Thus, to the extent Defendant Gulfstream seeks dismissal solely based on Defendant Jetro's purported request for attorneys' fees incurred in prosecuting the Crossclaim, that issue is moot because Defendant Jetro does not seek such fees.

Therefore, taking all reasonable inferences in the light most favorable to Defendant Jetro, Defendant Gulfstream's Motion to Dismiss (ECF No. 34) is DENIED as to Count I.

### C. Defendant Jetro Plausibly Alleges Breach of the Vendor Agreement Based on Defendant's Gulfstream's Refusal to Defend

#### 1. <u>The Unresolved Scope of Gulfstream's Duty to Defend Does not Require Dismissal at the Pleading Stage</u>

Section II of Defendant Gulfstream's Motion to Dismiss argues that Defendant Jetro's breach of contract claim (Count IV) fails because Defendant Gulfstream had no duty to defend when Defendant Jetro tendered it's defense. (ECF No. 34-1 at 12–13). Count IV alleges that the Vendor Agreement obligated Defendant Gulfstream to "defend and indemnify Jetro and its affiliates for claims arising out of its products, including their production packaging and delivery." (ECF No. 40-1 at 5). Defendant Jetro states that it "tendered the defense and indemnification of this matter to Gulfstream" and that "Gulfstream failed and/or refused to accept Jetro's tender" which therefore constituted a breach of the Vendor Agreement. *Id.*

Defendant Gulfstream breaks its argument into three individual sections, but states that Count IV "rises or falls on a single question: whether, under the provision Jetro pleaded, Gulfstream owed Jetro a defense at the time of tender." (ECF No. 34-1 at 13). Defendant Gulfstream answers that question in the negative, arguing that "the pleaded provision imposed no

such obligation, because every circumstance in which it operates turns on a predicate that has not been and cannot on the pleadings be established." *Id.* The Court disagrees.

First, Defendant Gulfstream states that because it is not Defendant Jetro's insurer, New York law imposes no independent duty to defend beyond that created in the Vendor Agreement. (ECF No. 34-1 at 13). Defendant Gulfstream further argues that its duty to defend is no broader than its duty to indemnify, and that "[w]here the indemnification obligation is conditioned on a predicate that remains undetermined, no defense obligation has matured, and a demand that the indemnitor defend is premature." *Id.* at 14. The alleged undetermined predicate relied on by Defendant Jetro to bring its claims within the purview of the Vendor Agreement is whether Plaintiff's claims arise "out of any act, negligence or omission by [Gulfstream] or its employees in the production, packaging, storage, or delivery" of its products. (ECF No. 40-1 at 3).

This Court notes that in New York, "the 'duty to defend' is presumed only in insurance policies, [and] the common law imposes no such duty on contractual indemnitors more generally. Accordingly, an indemnitor's obligation to defend must emanate (if at all) from the language of the contract." *Dresser-Rand Co. v. Ingersoll Rand Co*., No. 14-cv-7222, 2015 WL 4254033, at *7 (S.D.N.Y. 2015); *see also* ); *Bellefleur v Newark Beth Israel Med. Ctr*., 66 A.D.3d 807, 809 (2d Dep't 2009). However, "[i]f a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it simply because the indemnitor is not an insurer." *Id.*; *see also McCleary v. City of Glens Falls*, 819 N.Y.S.2d 607, 609 (N.Y. App. Div. 2006) ("Although [Defendant] contends that its duty to defend is no broader than its duty to indemnify because it is not an insurer . . ., that distinction has no significance here, where the [plaintiff] is due the full benefit of the bargain it reached ... under the clear and unambiguous terms of the contract.").

Defendant Gulfstream relies on several cases to support its proposition that no defense obligation matures when the obligation depends on an unresolved predicate. *See* (ECF No. 34-1 at 14); *Bellefleur*, 66 A.D.3d at 808–09.; *Brasch v. Yonkers Constr. Co.*, 306 A.D.2d 508, 510-11 (2d Dep't 2003); *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 128 A.D.3d 425, 426 (1st Dep't 2015). Those cases, however, do not establish a rule that a contractual duty to defend cannot arise until liability has been determined. Instead, each respective case found that when a contractual duty to defend is contingent upon a condition, the court cannot grant partial summary judgment where a factual dispute remains as to whether that condition has occurred. *See Bellefleur*, 66 A.D.3d at 809 ("Since the third-party plaintiffs are not entitled to indemnification at this juncture, they also are not entitled to a defense."); *Brasch*, 306 A.D.2d at 511 ("[S]ince the third-party defendant is not an insurer, it was inappropriate to require the third-party defendant to provide a defense to the defendant third-party plaintiff in the main action since the obligation of the third-party defendant to indemnify the defendant third-party plaintiff has yet to be determined . . . ."); *Inner City Redevelopment Corp.*, 128 A.D.3d at 426 ("No finding has yet been made as to [Defendant's] negligence, and thus no determination can yet be made as to its obligation to indemnify."); *Catlin Ins. Co. v. Champ Constr. Co.,* No. 24-CV-4499, 2025 WL 2494291, at *7 (S.D.N.Y. Aug. 29, 2025) ("[O]rdinarily, when the condition for defense costs is the existence of liability and the claim for defense costs is filed as part of the same case as the underlying personal injury claim, both the claim for defense costs and the personal injury claim should be decided at the same time."). The cases cited by Defendant Gulfstream do not establish that a contractual duty to defend necessarily must remain dormant until the underlying liability giving rise to the obligation is determined. Nor do they support dismissal of Defendant Jetro's claim at the pleading

stage merely because there has been no ruling on whether Plaintiff's injuries arose from the conduct of Defendant Gulfstream, Defendant Jetro, or any combination thereof.

Defendant Gulfstream also cites *Dresser-Rand Co. v. Ingersoll Rand Co*., No. 14 CIV. 7222 KPF, 2015 WL 4254033 (S.D.N.Y. July 14, 2015) to support its position. (ECF No. 34-1 at 14). In *Dresser-Rand*, while an underlying action was pending in the Court of Queen's Bench for Saskatchewan, Canada, Plaintiff initiated a separate action in the Southern District of New York seeking, among other relief, a declaratory judgment pursuant to the Federal Declaratory Judgment Act that Defendant was obligated to defend it in the Canadian litigation. *Id.* at *1. The United States District Court of the Southern District of New York found that because the obligations depended on unresolved factual determinations in the Canadian proceeding, adjudication of the defense obligation would be premature and may potentially conflict with later findings. *Id.* at *8–*9.

The posture of *Dresser-Rand* is materially different from this case. This Court is not being asked to decide contractual obligations that depend on findings made by another court. Although resolution of the defense obligation may require consideration of factual issues that overlap with the merits of Plaintiff's claims, this Court cannot say that the claim is deficient at the pleading stage. Another case from the United States District Court for the Southern District of New York applying New York law explained that "the claim for a duty to defend from a non-insurer frequently will require a decision on issues that will also be raised in the underlying case and thus may be best deferred and decided in tandem with the decision in the underlying case. But the fact that the court may have to address a merits question does not make the lawsuit unripe." *Catlin Ins. Co. v. Champ Constr. Co*., 2025 WL 2494291, at *7. "It may just mean that, as a matter of prudence, decision is best deferred until the underlying case is also decided." *Id.*

It may very well be true that Defendant Gulfstream ultimately prevails in its claim that it did not breach the Vendor Agreement nor any potential duty to defend. However, at this stage of the litigation, the Court is in no position to make such a determination.

2. Whether Gulfstream's Duty to Defend Had Matured Cannot be Resolved at the Pleading Stage

Next, Defendant Gulfstream argues that the Vendor Agreement's indemnification provision "operates in three circumstances, each defined by its own predicate . . . ." *Id.* It argues that "[n]one of those predicates is established, and none can be established on the pleadings." *Id.* at 15. Additionally, Defendant Gulfstream argues that because the indemnification provision in the Vendor Agreement contains no provision that created an obligation to defend regardless of an ultimate finding of fault, Defendant Jetro fails to state a claim for contractual indemnification. *Id.*

Defendant Gulfstream relies on *In re Bridge Construction Services of Florida, Inc.*, 140 F. Supp. 3d 324 (S.D.N.Y. 2015) to support its assertions. (ECF no. 34-1 at 15–16). However, this case reiterates that a contractual right of indemnification cannot be resolved on a motion for summary judgment when it depends on disputed issues of fact regarding each parties' respective fault. *Id.* at 331–32. This rule does not impact the Court's analysis of a motion to dismiss. In addition, the Court disagrees with Defendant Gulfstream's claim that a lack of a "commencement clause" is dispositive. As explained *supra*, the fact that the defense obligation may depend on unresolved factual issues does not warrant dismissal at the pleading stage. That conclusion is unchanged by the absence of any "even if disputed" language or the absence of a similar provision addressing when the obligation begins.

Finally, Defendant Gulfstream argues that "no duty to defend was due when Jetro tendered because no predicate of the provision had been established." (ECF No. 34-1 at 16). It claims that

the claim for breach of contract "presupposes a duty that was due and dishonored" and that a claim alleging breach of an obligation that had not matured fails to state a claim . . . ." However, at this stage of the proceedings, the Court cannot determine whether Defendant Gulfstream's duty to defend matured at the time Defendant Jetro tendered or whether refusal to tender constituted a breach of the Vendor Agreement. While Defendant Gulfstream may ultimately prevail in establishing that no duty arose, the Court will not resolve such issues of fact when ruling on the Motion to Dismiss.

Therefore, taking all reasonable inferences in the light most favorable to Defendant Jetro, Defendant Gulfstream's Motion to Dismiss (ECF No. 34) is DENIED as to Count IV.

## IV. CONCLUSION

For the foregoing reasons, it is this 14th day of September 2026, hereby ORDERED that Defendant Gulfstream Produce Inc.'s Motion to Dismiss (ECF No. 34) is DENIED.

Date: September 14, 2026

/s/

J. Mark Coulson
United States Magistrate Judge